UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARDO DESANTIAGO, CDCR #V-98424<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>OH, M.D.; L. MARQUEZ, R.N.,<br><br>　　　　　　　　　　Defendants. | Civil No.　08-1882 BTM (WMc0<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT MARQUEZ'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c) [Doc. No. 35]; and**<br><br>**(2) ISSUING ORDER TO SHOW CAUSE WHY DEFENDANT OH SHOULD NOT BE DISMISSED FOR FAILURE TO PROSECUTE PURSUANT TO FED.R.CIV.P. 4(m)** |

**I.**

**PROCEDURAL BACKGROUND**

Edwardo DeSantiago ("Plaintiff"), a state prisoner currently incarcerated at Calipatria State Prison ("CAL"), proceeding pro se and *in forma pauperis*, has filed this civil rights action pursuant to 42 U.S.C. § 1983. Defendant Marquez[1] has filed a filed a Motion for Summary Judgment pursuant to FED.R.CIV.P. 56 [Doc. No. 35]. The Court notified Plaintiff of the

---

[1] The Court's docket reflects that Defendant Oh has not been served in this action.

requirements for opposing summary judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) [Doc. No. 36]. After being granted an extension of time [Doc. No. 30], Plaintiff filed an Opposition [Doc. No. 52], to which Defendants have filed a Reply [Doc. No. 54].

## II.

### FACTUAL BACKGROUND

Plaintiff was first seen at the CAL medical clinic regarding his issues relating to his ear on December 5, 2007. (*See* Defs.' Mot. for Summ. J., Ex. A, Encounter Form: Earache dated Dec. 5, 2007). At the time Plaintiff was initially seen with regard to his ears, Plaintiff was examined by Defendant Leticia Marquez, a registered nurse at CAL. (*See* Decl. of Leticia Marquez at ¶ 3.) During this examination, Defendant Marquez declares that Plaintiff "complained of ear problems generally, an ear infection, and severely clogged ears, with mild pain and itching in the left ear." (*Id.*) Defendant Marquez found "dark cerumen (ear wax), but no bleeding, drainage or pus." (*Id.* at ¶ 4.) Due to Plaintiff's complaints of ear pain, Defendant Marquez gave him a prescription for Tylenol, Debrox ear drops, instructed him to "avoid putting anything in his ears," and to come back to the clinic within 72 hours for a "lavage of both ears." (*Id.* at ¶ 5.)

In his Complaint, Plaintiff makes no mention of this December 5, 2007 examination and only refers to an examination on December 10, 2007 during which he claims that he went to the medical clinic for a "medical procedure of having both his ears lavaged" due to "excessive wax build-up." (Compl. at 4.) An ear lavage is a cleaning procedure in which a syringe "is positioned outside the ear canal" and releases a flow of a "mixture of lukewarm water and hydrogen peroxide into the ear canal with the objective of loosening and ridding the ear canal of excess cerumen." (Marquez Decl. at ¶ 7.) Marquez initially performed a lavage on Plaintiff's right ear that was "without incident." (Compl. at 4.) Plaintiff then claims Marquez "began lavaging plaintiff's left ear canal by pushing the syringe deep into the canal of plaintiff's left ear, causing pain." (*Id.*) When Plaintiff complained of pain he claims that Marquez

1  refused to stop the procedure, told Plaintiff he was a "big baby," and continued to push the
2  syringe deeper into Plaintiff's ear which he claims "eventually" ruptured his left ear drum . (*Id.*)
3        Defendant Marquez declares that when Plaintiff began to complain of ear pain she
4  "stopped the procedure immediately" and examined Plaintiff's ear. (Marquez Decl. at ¶ 8.) She
5  noted that the "ear canal appeared uninjured and there was no drainage or pus discharge," in
6  addition she noted that the "eardrum was intact." (*Id.*) Defendant also submits the
7  interdisciplinary progress notes dated December 10, 2007 in which Defendant Marquez noted
8  the complaint of ear pain and indicates that she conferred with Dr. Oh who examined Plaintiff.
9  (*See* Def, Ex. B, Interdisciplinary Progress Notes dated Dec. 10, 2007.) Plaintiff disputes that
10 the allegation that Dr. Oh performed an examination but does agree that Dr. Oh directed
11 Plaintiff to continue putting the previously prescribed ear drops in his ears. (*See* Compl. at 5.)
12       Defendant Marquez "gave Plaintiff a pass to return to the Clinic for a lavage," instructed
13 him to use the ear drops and to "avoid putting anything else in his ears." (Marquez Decl. at ¶
14 9, Defs.' Ex. B.) Defendant Marquez did not "see or examine Plaintiff after December 10."
15 (*Id.* at ¶ 10.) Plaintiff alleges that following the procedure, he notified Correctional Officer
16 Mendoza[2] that he was experiencing "extreme pain" and Officer Mendoza arranged for Plaintiff
17 to be seen by Dr. Oh. (Compl. at 5.) Dr. Oh allegedly told Plaintiff to continue using the ear
18 drops despite the "extreme pain and hearing impairment plaintiff was having." (*Id.*)
19       Later that night, Plaintiff alleges that he woke up in extreme pain and his left ear was
20 bleeding. (*Id.* at 6.) On December 11, 2007, Plaintiff returned to the Medical Clinic where he
21 claims he was seen by Defendant Marquez. (*Id.*) He claims Defendant Marquez attempted to
22 cover up her "culpability" by writing in Plaintiff's medical file that he was "instructed to use
23 ear drops & do not put anything else in his ear." (*Id.*) Plaintiff was transferred to a different
24 Medical Clinic where he was again examined on December 12, 2007 for the pain he was feeling
25 in his left ear. (*Id.*) The nurse practitioner examined Plaintiff and referred him to be seen by

---

28    [2] Correctional Officer Mendoza is not a named Defendant.

a physician. (*Id.* at 7.) Plaintiff was examined by Dr. Hjerpe[3] on December 19, 2007 who determined that Plaintiff's left ear drum had been ruptured and an infection was also detected. (*Id.*) Dr. Hjerpe prescribed Plaintiff medication, ordered a referral to an Otolaryngologist and opined that Dr. Oh's recommendation to continue the ear drops "only exacerbated an already injured ear drum." (*Id.*) Plaintiff had a hearing test on March 28, 2008 which showed that "most of plaintiff's hearing" in his left ear had returned. (*Id.* at 8.) A later consultation in May of 2008 with Dr. Levin[4] indicated that Plaintiff sustained permanent damage to his "(1) middle ear mucora; (2) collagen; and (3) epithelium." (*Id.*)

## III.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Standard of Review

Summary judgment is properly granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court shall consider all admissible affidavits and supplemental documents submitted on a motion for summary judgment. *See Connick v. Teachers Ins. & Annuity Ass'n*, 784 F.2d 1018, 1020 (9th Cir. 1986).

The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970). However, to avoid summary judgment, the nonmovant cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Rather, he must present "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The Court may not weigh evidence or make credibility determinations on a motion for summary judgment.

---

[3] Doctor Hjerpe is not a named Defendant.

[4] Defendant Levin is not a named Defendant.

Quite the opposite, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 255; *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The nonmovant's evidence need only be such that a "fair minded jury could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 255. However, in determining whether the nonmovant has met his burden, the Court must consider the evidentiary burden imposed upon him by the applicable substantive law. *Id.*

A verified complaint or motion may be used as an opposing affidavit under FED.R.CIV.P. 56 to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence. *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam) (complaint); *Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) (motion). To "verify" a complaint, the plaintiff must swear or affirm that the facts in the complaint are true "under the pains and penalties of perjury." *Schroeder v. McDonald*, 55 F.3d 454, 460 n.10 (9th Cir. 1995).

**B.   42 U.S.C. § 1983**

Section 1983 authorizes a "suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution." *Nelson v. Campbell*, 541 U.S. 637, 124 S.Ct. 2117, 2122 (2004).

**C.   Eighth Amendment Medical Treatment Claims**

Defendant Marquez argues that no genuine issue of material fact exists to show that she acted with deliberate indifference required to support an Eighth Amendment violation.

**A.   Standard of Review**

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105. "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that Defendants' medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm and that Defendants had a "sufficiently culpable state of mind" when they either provided or denied him medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted). Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002);.

Although the "routine discomfort inherent in the prison setting" is inadequate to satisfy the objective prong of an Eighth Amendment inquiry, *see Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 1999), the objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted).

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). "Deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

Moreover, a difference of opinion between medical professionals concerning the appropriate course of inmate treatment or care is not enough, by itself, to support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). Nor does a difference of opinion between the prisoner and his doctors constitute deliberate indifference.

*Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). And, while deliberate indifference can be manifested if a doctor or prison guard intentionally denies or delays access to medical care or otherwise interferes with medical treatment already prescribed, *see Estelle*, 429 U.S. at 104-05, the delay must also lead to further injury or be somehow harmful. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (noting that harm caused by delay need not necessarily be "substantial"), *overruled on other grounds, WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

### B. Application to Plaintiff's Allegations

Here, the evidence in the record is far from clear as to whether Plaintiff has shown the "objective" component of an Eighth Amendment inadequate medical treatment claim. *See Clement*, 298 F.3d at 904. However, Plaintiff's verified Complaint and the documents attached to Defendant's Motion indicate that Plaintiff did suffer from a "left tympanic membrane perforation." (Compl. at 7; Def.'s Ex. E, ENT Clinical Note dated Jan. 4, 2008). While Plaintiff may have ultimately suffered a perforated eardrum, when he was first examined by Defendant Marquez he only presented with excessive cerumen. (Marquez Decl. at ¶ 4.) Defendant Marquez saw no evidence of draining, bleeding or pus from Plaintiff's ear. Plaintiff has offered no evidence to contradict Defendant's proffered evidence that at the time Marquez examined Plaintiff he did not have a serious medical need. Instead, Plaintiff asserts in his opposition that it was the way in which Defendant Marquez performed the lavage that ultimately caused his serious medical need. (*See* Pl.'s Opp'n at 3.) Thus, the evidence is insufficient to show Plaintiff's medical needs were objectively "serious" when he was examined by Defendant Marquez. *See Estelle*, 429 U.S. at 105.

In addition, the record before the Court does not show any triable issue as to the subjective component of an Eighth Amendment inadequate medical care claim against Defendant Marquez. *See Frost*, 152 F.3d at 1128; *Farmer*, 511 U.S. at 837. In order to justify trial, Plaintiff must point to evidence in the record to show that Defendant Marquez was "deliberately indifferent" to his serious medical needs, *i.e*, that she knew, yet consciously disregarded his pain or the need to provide him constitutionally adequate care. *See McGuckin,*

1  974 F.2d at 1060. This "subjective approach" focuses only "on what a defendant's mental
2  attitude actually was." *Farmer*, 511 U.S. at 839.

3        Defendant Marquez has provided a declaration and documentation that show she treated
4  Plaintiff on two occasions for ear pain. In her declaration and in the documentation, it shows
5  that she examined his ears, provided medication and performed a treatment she believed
6  necessary to remove the excess cerumen in his ears. (*See* Marquez Decl. at ¶¶ 3-7; Def.'s Ex.
7  A, Ex. B.) Defendant Marquez has also supplied the declaration of an expert witness, Theodore
8  M. Mazer, M.D., who states that an ear lavage "can on occasion result in some discomfort, or
9  infection following the procedure, and even more rarely may result in the perforation of the
10  drum." (Declaration of Theodore M. Mazer, M.D. at ¶ 4(a).

11        In response, Plaintiff claims that during the lavage procedure he began to experience
12  pain, asked Defendant Marquez to stop, at which time he claims she told Plaintiff to "stop being
13  a 'big baby', pushing the syringe further into plaintiff's ear canal and puncturing his left ear
14  drum." (*See* Pl.'s Opp'n to Mtn. for Summ. J. at 3.) The crux of Plaintiff's case is that
15  Defendant Marquez did not stop when he expressed pain during the lavage procedure.
16  Defendant Marquez has provided expert testimony in which it is opined that a "lavage can on
17  occasion result in some discomfort" and "[o]ne cannot always remove cerumen impactions
18  without some discomfort to the patient." (Mazer Decl. at ¶¶ 4(a); 4(c)).

19        The fact that Plaintiff did experience some pain during the procedure is simply
20  insufficient to overcome Defendants' evidence that Defendant Marquez was not deliberately
21  indifferent to a serious medical need. Even it Plaintiff did express pain to Defendant Marquez
22  and she continued the procedure despite Plaintiff's pain, Defendants have supplied evidence to
23  show that pain is not uncommon with regard to the lavage procedure. Plaintiff has failed to
24  point to any evidence in the record which might contradict Defendant's expert testimony.
25  Further, Theodore Mazer concludes that Defendant Marquez' care of Plaintiff fell within the
26  applicable standard of care, including the potential complication of a perforated eardrum.
27  (Mazer Decl. at ¶¶ 4(c); 4(f)).
28  / / /

Because this evidence is not contradicted anywhere in the record, the Court finds no genuine issues of material fact exists as to whether Defendant Marquez acted with deliberate indifference to Plaintiff's serious medical needs. *Estelle*, 429 U.S. at 105. Accordingly, the Court GRANTS Defendant's Marquez's Motion for Summary Judgment as to Plaintiff's Eighth Amendment claims pursuant to FED.R.CIV.P. 56.

### D.    State Law Professional Negligence claim

Finally, to the extent Plaintiff is seeking to present claims alleging violations of state laws or regulations, the Court declines to exercise supplemental jurisdiction over such claims. "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Acri v. Varian Assoc., Inc.,* 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (identifying relevant factors as "judicial economy, convenience, fairness and comity.").)

The Court finds that the instant case presents a situation where the values of "judicial economy, convenience, fairness, and comity" weigh in favor of dismissal without prejudice of Plaintiff's state law claims. Therefore, the Court **DECLINES** to exercise supplemental jurisdiction over Plaintiff's state law claims and **DISMISSES** any state law claims without prejudice.

### IV.
### Remaining Defendant

A review of the Court's docket indicates that Plaintiff has failed to properly serve the only remaining Defendant in this action, Defendant Oh. *See Walker v. Sumner,* 14 F.3d 1415, 1421-22 (9th Cir. 1994) (where a pro se plaintiff fails to provide the Marshal with sufficient information to effect service, the court's sua sponte dismissal of those unserved defendants is appropriate under FED.R.CIV.P. 4(m)).

Accordingly, this Court ORDERS Plaintiff to show cause *no later than thirty days (30) after this Order is filed*, why the claims against this Defendant should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m). If Plaintiff wishes to proceed with his claims

1 against Defendant Oh he must provide the Court with proof of proper service within **thirty (30)** days from the date this Order is filed  Otherwise, Defendant Oh will be dismissed from this action without prejudice.

## V.

### CONCLUSION AND ORDER

For all the reasons set forth above, the Court hereby:

1) GRANTS Defendant Marquez' Motion for Summary Judgment pursuant to FED.R.CIV.P. 56(c) [Doc. No. 35].

2) Because there are no remaining claims against Defendant Marquez, and there is no just reason for delay, the Clerk of Court is directed to enter a final judgment as to Defendant Marquez pursuant to FED.R.CIV.P. 54(b).

**IT IS FURTHER ORDERED** that:

3) Plaintiff must show cause no later than **thirty (30)** days from the date this Order is filed why the claims against Defendant Oh should not be dismissed for want of prosecution pursuant to FED.R.CIV.P. 4(m).  If Plaintiff fails to provide the Court with documentation demonstrating proper service on Defendant Oh within **thirty (30)** days from the date this Order is filed,  the claims against him in this  action will be dismissed without prejudice.

**IT IS SO ORDERED.**

DATED: July 21, 2011

_____
Honorable Barry Ted Moskowitz
United States District Judge